My name is Matthew Jordan. I'm here on behalf of Edwin Fujinaga, MRI International, CSA Service Center, and the Factory & Company. I'll pay attention to the clock, but I'd like to reserve three minutes. Yeah, just a little bit so we can hear you. Exactly. Is that good? A little better. I'd like to reserve three minutes for rebuttal, Dr. Robertson. I know there are several issues that we presented in our appeal briefs. However, I would like to use today's argument to focus on two primary issues. First being that the district court erred and committed an abuse of discretion in finding adverse inference due to Edwin Fujinaga's use of the Fifth Amendment privilege during a deposition. Secondly, I'd like to discuss with the court that the district court erred in relying on unauthenticated and inadmissible evidence once it found summary judgment and also which violated Day Rule 56 of the civil procedure. This court, in dealing with the Fifth Amendment issues, is in a unique position to protect our Fifth Amendment rights when there are a prosecution by a government agency also paralleled by a criminal investigation and the threat of criminal proceedings. Once the Fifth Amendment creates a number of rights, both civil and criminal, it specifically states that no person shall be compelled in any criminal case to be a witness against himself nor deprive life, liberty, or property without due process of law. In Garner v. United States, the Supreme Court stated that this privilege bars the government from the use of compulsion to obtain incriminating statements as well as guarantees the right to remain silent in absent immunity. When the adverse inference is sought by a government agency in a civil proceeding, it actually acts to compel a defendant to make possibly incriminating statements or he is being forced to choose to waive his Fifth Amendment right to not incriminate himself. But an adverse inference can be drawn under certain circumstances. It's not barred from being drawn. You agree with that, correct? Your Honor, yes. I believe that there is a long history of cases that establish that there is some discretion with the court, but it's not an absolute discretion. This court has recognized in Doe v. Glanter that this is a very tenuous situation where the parties' Fifth Amendment rights are being challenged or being asked to be sacrificed by finding an adverse inference. In that case, the court states that the tension between one party's Fifth Amendment rights and another party's right to fair proceedings is resolved by analyzing each instance where the adverse inference was drawn or not drawn on a case-by-case basis. And they're saying that this has to be viewed under a microscope in each particular civil litigation. So what's the problem here? For me, there is a test. There has to be a need for the information, not a less burdensome way of obtaining the information. There has to be some other independent evidence of the fact-wise that that standard met here. First off, Your Honor, just judging Mahan's opinion for the Supreme Judgment Order, he does not even go through that process of making a balance of those rights. He simply states that that's- I can't remember yet exactly. Maybe it comes up in a few cases. But summary judgment ruling on Mr. Fugin, I can't remember. Yes, there's- That ruling, that opposition, did you actually argue in opposition to the motion for summary judgment that the court should not draw? Did you make any difference, or was there a graze on the motion for reconsideration? I believe that it was an inspiration in both places. The trial counsel was not related to our firm. They did, in their opposition to the summary judgment motion from the SEC, made the statement that they should not be able to make this adverse inference on the Fifth Amendment use during the deposition for several different reasons. So, yes, this was briefed and maintained. And you're saying that in the Supreme Court judgment summary judgment ruling didn't do the balance that was required? No, Your Honor. He merely states that he- In the summary judgment order on liability, he merely states that the SEC is seeking the adverse inference request. And on top of that, at the very end of that judgment, he states that coupled with Mr. Fugin's control of MRI and his use of Fifth Amendment privilege, he finds, I answer, that there's no balancing act done there. He simply made that statement. There's no review of the evidence, and there's no in-depth review of what was actually spoken of. But we assume that he conducted that balance in-depth. Your Honor, I don't think that's- When we're dealing with Fifth Amendment right, not only to remain silent, but also to due process. We have conflicting- We have a situation where a person is being presented with whether or not to preserve one right versus another. And that is not the way our Constitution was drafted. We are guaranteed these rights in all cases. Although we understand that there is a disability in a civil matter to make the adverse inference, it simply cannot be granted in every situation, especially where there's no indication from the judge that a balancing test has been achieved. We suggest that this test that was tried to be established in Bill v. Lanser, merely because it doesn't establish the actual causes to protect our rights. We're suggesting that we should have an effective procedure where we, in cases just like this, where we have a governmental agency pursuing civil prosecution with a parallel criminal prosecution. First, the very similar instance of Bill v. Lanser. Determine the possibility given by the defendant that a civil proceeding could be used against him in a criminal prosecution. Secondly, is there a method less burdensome to the party in invoking the Fifth Amendment? Well, what is the less burdensome method? This testimony went to a question of his intent, and how else is that going to be established? There are several questions in addition to his intent. However, Your Honor, the less burdensome method could have been to stay the civil proceedings until either the criminal prosecution was resolved or the criminal investigation resulted in a criminal case. Was that application made to stay the proceedings? To my knowledge, I don't believe any request for stay of the proceedings have been made. And some of the judge should have done on his own? I believe that the judge has the discretion to make the determination. Did you ever raise that argument at any time prior to a moment ago that that's what should have happened? I don't think in this particular word, Your Honor. But yes, we have been making that statement throughout our briefs. Third, if referred to the non-invoking party substantially outweighs the detriment to the invoking party of the Fifth Amendment, right? The court may compel the invoking party to answer those questions. There is no process by the SEC to seek an order compelling Mr. Griswold to answer these questions and really be an adverse influence without attempting to protect his Fifth Amendment rights. Are these ones that they have to do that? No, that's why I would think that this is a unique position for this court to establish. It's the same thing as Miranda v. Arizona that gave us our Miranda rights. What is the district court's order to answer the questions? Order the questions with the knowledge of what could be used against you. Not only in this case. Your order to answer the questions. If you don't answer them, you're likely to be subject to an adverse influence. Adverse influence, in this case, to a discouragement order of nearly $600 million, including civil penalties of $20 million, not only to your company, but also to you as an individual. The result, again, now... I guess the judge, you know, or the judge or somebody could also say, if you don't answer the questions, you might go to jail and get to court. That's right. Just like the right to remain silent, but you don't have to remain silent. You can speak. Your words will be used. Well, he's only directed to answer if he determines that it's not a viable assertion of the Fifth. You're not contending here that he didn't... it wasn't correct for him to assert the Fifth Amendment here, are you? Not saying that it was incorrect or saying that it was incorrect. The judge can't order someone to answer the question unless he... unless the judge determines that it's not a viable assertion of the Fifth Amendment. There's no way an answer could incriminate him, and clearly answers to these questions would have incriminated him. But also, it would have also compelled the court to make the balancing test that Dilbert's measure actually promotes. By going through this process, he would have to say whether this will likely result in the criminal proceedings and whether by sacrificing his Fifth Amendment privilege or continuing to invoke his Fifth Amendment privilege that he's going to be receiving an adjustment for resolving in substantial judgment against him. Your Honor, should we move on to the fact that the judge did rely on inadmissible, unauthenticated documents to... Was Dilbert's argument made the law wise? It was, Your Honor. It was? It was, Your Honor. And... Where in the record did they make the argument below that the documents shouldn't have been relied on? And the evidence would have... I'm sorry. It was objected to in Document 135, page 14. The trial counsel objected to the... In general terms, and blatantly, that the court... That the SEC was utilizing inadmissible, unauthenticated evidence. Where is that? I'm sorry. I'm sorry. Page 14 of Document 135 of the trial court document. Was it... Was it objected to? It was in the ombudsman's brief to the SEC's brief in support of the punishment. Your Honors, we acknowledge that Rule 56 as amended in 2010 did eliminate, ultimately, the unethical requirement that evidence submitted at summary judgment must be authenticated. However, this Court has recognized that even though there has been that amendment to the... To Rule 56, we... We still have to establish that such evidence has to be determined to be inadmissible at a trial. And that simply means that authentication has to occur. Actually, in Judge Mahan's ruling in Jarvis v. Martinez in 2010, it's an unpublished case. However, he states right there that authentication is a condition pursuant to admissibility, and this condition is satisfied by evidence sufficient to support the finding of matter in question as what its proponent claims. He did not go through that analysis in this case, although he did find that analysis to go through in 2010. I have less than two minutes, Your Honors. I'm going to turn it over to my brother. Thank you. Good morning. My name is Ethan Ford. I'm the funeral lawyer on behalf of the Securities Exchange Commission. I'll touch on the two issues that Losing Counsel just mentioned first. First is the adverse inference. The argument that he's presenting now is that there was a balancing test that wasn't applied. That specific argument wasn't raised below. As we detailed briefly, there were some other arguments as to whether there was proper inhibitants, which is the standard under SEC v. Colello, but not this sort of balancing argument. Even taking it on its terms, the district court probably applied SEC v. Colello in considering the facts at issue, which are that there's corroborating evidence, plus the refusal to testify. The corroborating evidence concerns, as the court said, his control of the scheme. And let's call it that this adverse inference was drawn purely for scienter, and the overwhelming evidence of his control of the scheme, his involvement in every aspect of the misrepresentations, and the failures in taking the money, running a policy scheme knowingly, and then later paying off investors that were likely to tell authorities first to hide the scheme. So, I mean, there's extensive evidence, which goes into the further point that adverse inference, even if the court abuses discretion, that's a test standard, certainly, isn't met here. It really would be hard for me to speak to such overwhelming evidence of scienter, just from the other evidence in the case, that you can draw out the adverse inference that relies solely on the control of the scheme, scienter, and the other evidence of scienter, in reaching the same conclusion. And so that's renewable to no vote. The district court's grant of summary judgment based on scienter's statement, if that were an issue, which it isn't, the district court's ruling should be confirmed on that ground alone. Secondly, going to the evidentiary objections, this wasn't reserved below, wasn't really raised. I believe counsel says there was a general reference in the opposition brief I don't know what he's referring to, but under this court's clear authority, that wouldn't be good enough. As we see in the brief, the law is that you have to move to strike, make very plain your objection to evidence at the summary judgment stage, and, as a matter of fairness, give the other side a chance to preserve its foundation, present other support, and give the district court a chance to rule. If it does overlook an objection here, there really were no objections made except for a substantive one, a document opposing our statement of undisputed facts. There are a few, most of the evidence actually conceded there, either by not saying anything or, in a couple of cases, in that document, Mr. Fujinaga said that is an authentic document. So there were a few pieces of evidence as to which objection was mentioned, but it wasn't raised in the brief. The brief focuses entirely, opposition brief, on a different evidentiary objection to the Condon Declaration. They contended it was improper expert opinion. They didn't pursue that on appeal. It doesn't reference any of the Simpson Declaration at all, and it certainly wasn't that they didn't move to strike. They didn't notify the court. So even if there were some general reference that could be construed as kind of a broad concern with the authentication, that may not be sufficient. In every detail in the brief, there's more than enough evidence to support, even if those 12 pieces were considered, were taken out, there's more than enough evidence to support the scheme to defraud virtually every stage of the scheme. Finally, I just wanted to touch on and clarify one issue in the briefs. Closing counsel in the opening brief argues that there wasn't a security issue, and the reply clarifies that there was a security, but that there was the extent that essentially he complied with one term of the contract, the investment contract, and specifically whether the accounts receivable he had purchased were enough, the minimal amounts were enough to meet the collateral requirements specified in the statistics themselves. Just to be clear, this is a breach of contract case, this is securities fraud, and the district court didn't rely on the failure to meet that specific term of the contract. It relied on the extensive evidence of misrepresentations that established the scheme to defraud. So it's really an immaterial dispute, even if the word dispute, which it really wasn't something that was raised until, I think, the reply brief. It would be an immaterial, factual dispute concerning compliance with one term of the investment contract where every other aspect certainly wasn't met. The misrepresentations were made, it was a Ponzi scheme. All the disputed evidence supports all of this, hundreds of millions of dollars taken from investors, given to pay back other investors, and used to finance lavish lifestyles. So this is all separate from this one term that he says would be enough to somehow avoid liability for securities fraud. And other than that, I will rest on the briefs unless the court has any further questions. I don't think there's any other questions. Thank you. Your Honor, just on the budget issue, it just has two. One issue regarding the objections to the evidence below, regardless of whether the court finds that there was an appropriate objection which resulted in a ruling, is actually this court's holding in Griswold v. Siegel, a 1994 case that rejects argument, rejects the argument of failure to object to authentication, which is how a court constitutes waiver of the authentication argument in those documents. In that case, the court proceeded to find that based on the court's rulings and consistent rulings, this court has consistently held that documents which have not had a proper foundationally to authenticate them do not support questions or summary judgments. And that is true of all of the rulings of this case, without having to discuss the issue of the objection below. And that's just the way it happened. And that is all I have to get to the court. I don't have anything else to say, Your Honor. Thank you. Thank you, Your Honor. We appreciate your argument. This matter is finished. And that is our session for today and the week.
judges: Tashima, Paez, Amon